**KEYSTONE COCA–COLA BOTTLING CORPORATION, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 1996.
Decided April 11, 1997.
Reargument Denied June 4, 1997.

Jeffrey C. Kauffman, Chicago, IL, for petitioner.

Judith M. Gilroy, Harrisburg, for respondent.

Before SMITH and FRIEDMAN, JJ., and MIRARCHI, Jr., Senior Judge.

SMITH, Judge.

Keystone Coca–Cola Bottling Corporation (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board) that reversed the decision of a referee denying benefits to William D. Williams, the representative Claimant and member of Teamster's Local # 401 (Union). Benefits were denied by the referee under the work stoppage provisions of Section 402(d) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(d). Employer questions whether the Board erred and acted outside of its jurisdiction in determining that Employer engaged in bad faith bargaining and whether

this determination was supported by substantial evidence; whether the Board erred in determining the validity of the parties' 1994–1999 collective bargaining agreement; whether the parties established the status quo by operating under new terms and conditions of employment for a period of eight months from March to November 1994; and whether Claimant was eligible for benefits when the Union engaged in a strike and refused to operate under the status quo.

## I.

On August 26, 1991, Joseph Gorham, the Union's Secretary/Treasurer, and Robert Palo, Employer's Vice President of Human Resources, agreed to extend the existing collective bargaining agreement between the parties which expired on September 10, 1991, subject to the right of either party to serve a 72–hour notice upon the other to terminate the extension agreement. More than two and one-half years later, on or about March 18, 1994, Employer gave notice to the Union that it intended to terminate the August 1991 extension agreement. Three to four days later, Gorham was informed that Palo had a new proposal for the employees' pension plan and other items negotiated. The pension plan proposal provided for a reduction of Employer's contribution for each employee from $134.34 per month to $50 per month, to end December 31, 1998.

Gorham presented the entire new proposal to the Union on March 26, 1994, based upon Palo's representations that the reduced pension contribution amount was acceptable to the Central Pennsylvania Teamsters Pension Fund and had been approved by the Acting Administrator of the Fund, Joe Samolovich. The Union membership voted to ratify the proposal by a vote of 41 to 40, which included two absentee ballots. Certain vote issues surfaced and were to be resolved by the International Office of the Union; however, before the issues could be resolved, Gorham discovered that the Teamster's Pension Fund would not permit the pension changes nor accept the $50 monthly contribution per employee and that Samolovich, in fact, had not approved the pension proposal as indicated by Palo. Gorham thereafter informed Palo that there was no ratified agreement because Palo was unable to deliver on the pension proposal. At a meeting convened by the Pension Fund administrator, trustees and attorneys, Palo was informed that the trustees could not accept a reduction in pension contributions because of the adverse impact upon the membership at the time of retirement.[1]

In October 1994, Employer unilaterally implemented changes consistent with the proposal voted upon by the Union membership, which also included a change in the method of computing Claimant's compensation from an $11.26 hourly rate to a $10 per hour base pay plus commission on products sold. Gorham and Palo corresponded through November 1994 in an effort to resolve the dispute, while Gorham simultaneously asserted that the Union's ratification vote was invalid, that the Union wanted to resume negotiations and that the Union was willing to return to the terms and conditions of the August 1991 extension agreement as negotiations continued. Palo's position was that a labor-management agreement was entered into as of the date of the ratification vote and that the only unresolved issue was the pension contribution amount. Because Gorham and Palo were unable to resolve matters, the Union voted to strike on November 17, 1994, and on November 21, 1994, the Union commenced its work stoppage. Thereafter, Claimant applied for unemployment benefits.

The Wyoming Valley Job Center determined that Claimant was not entitled to benefits because the work stoppage was a strike. Claimant appealed, and the referee affirmed the Job Center. On further appeal, the Board reversed the referee and made the following pertinent findings of fact:

> 56. The strike vote was caused in large measure by the employer's implemen-

---

1. On August 8, 1994, the Union filed an unfair labor practice charge with the National Labor Relations Board (NLRB), which issued a complaint. At the hearing before the referee, Claim- ant was prohibited from introducing any documentary evidence concerning the unfair labor practice charge and the formal complaint issued by the NLRB.

tation of the disputed March 26, 1994, agreement in mid-October 1994.

57. The work stoppage began on or about November 21, 1994; however, the union contacted Palo by letter and indicated to the company that the union was willing to cease its picketing activity and return to work again, as it continually and consistently expressed to the company under the terms and conditions of the extension agreement of August 26, 1991. The union indicated that they were not in violation of any agreement and that it felt its activity was protected because of the issuance of a complaint by the NLRB for bad faith bargaining. The letter also registered the union's displeasure by the actions of the company to hire permanent replacement workers.

Board Decision, pp. 4–5.

The Board stated that Employer's proposal was never properly or legally ratified, was never reduced to a formal written contract and was never signed by the parties. It further stated that ratification of the proposal was based upon Employer's misrepresentations at the bargaining table, resulting in the Union's filing a National Labor Relations Board (NLRB) complaint. In ruling that Claimant was eligible for benefits, the Board determined that Employer breached the status quo that was established by the August 1991 extension agreement, and when Employer, relying on the ratification vote, changed the employees' method of compensation, Employer changed the status quo. This unilateral action by Employer was taken despite the Union's offer to return to work under the status quo. Consequently, the Board held that the Union sustained its burden under Section 402(d) of the Law by proving that the work stoppage emanated from a lockout rather than a strike.

## II.

Section 402 of the Law provides in pertinent part as follows: "An employe shall be ineligible for compensation for any week … (d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lockout) at the factory, establishment or other premises at which he is or was last employed…." The Pennsylvania Supreme Court developed the following test for determining whether a dispute is a lockout or a strike:

> Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contact negotiations; and has the employer agreed to permit work to continue for a reasonable time under the preexisting terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a "lockout" and the disqualification for unemployment compensation benefits in the case of a "stoppage of work because of a labor dispute" does not apply.

*Vrotney Unemployment Compensation Case*, 400 Pa. 440, 444–445, 163 A.2d 91, 93–94 (1960).

In *Philco Corp. v. Unemployment Compensation Board of Review*, 430 Pa. 101, 242 A.2d 454 (1968), the Supreme Court refined the *Vrotney* test to require a determination as to which side "first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing." *Id.*, 430 Pa. at 103, 242 A.2d at 455. The term "status quo" has been defined as the last actual, peaceable and lawful, uncontested status that preceded the controversy, and in determining the status quo, courts must focus on those pre-existing terms and conditions of employment that were contained in the expired contract. *See Miceli v. Unemployment Compensation Board of Review*, 519 Pa. 515, 549 A.2d 113 (1988).

Where the work stoppage takes the form of a strike and a constructive lockout is asserted by the union, it is the burden of the union to demonstrate its willingness to maintain the status quo and the employer's refusal to do so. *Stanley Flagg and Co., Inc. v. Unemployment Compensation Board of Re-*

*view,* 146 Pa.Cmwlth. 248, 605 A.2d 443, *appeal denied,* 532 Pa. 648, 614 A.2d 1144 (1992). In this regard, the Court reiterated in *Murdoca v. Unemployment Compensation Board of Review,* 122 Pa.Cmwlth. 303, 551 A.2d 1157 (1988), citing *Miceli,* that compensation authorities must determine the cause of a work stoppage before an award of benefits may be made.

■ When the party with the burden of proof in a Section 402(d) case has prevailed before the Board, its findings of fact are conclusive on this Court so long as the record, taken as a whole, contains substantial evidence to support those findings. *Babcock & Wilcox Co. v. Unemployment Compensation Board of Review,* 119 Pa.Cmwlth. 566, 547 A.2d 850 (1988), *appeal denied,* 523 Pa. 637, 565 A.2d 446 (1989). This Court's scope of review of the Board's decision here is limited to determining whether the findings of fact are supported by substantial evidence, whether errors of law were committed or whether constitutional rights were violated. *Stanley Flagg and Co., Inc.*

### III.

■ Employer initially argues that the Board committed error and acted outside of its jurisdiction when it determined that Employer engaged in bad faith bargaining and that even if the Board possessed jurisdiction to make this determination, it was not supported by substantial evidence. Employer maintains that the Board's decision improperly focuses in large part upon the issuance of the NLRB complaint, which was excluded from the record by the referee on relevancy grounds. According to Employer, the mere act by the Board of engaging in what Employer characterizes as "deciding an unfair labor practice" violates the pre-emption doctrine. This Court has held, however, in *Schulmerich Carillons, Inc. v. Unemployment Compensation Board of Review,* 154

Pa.Cmwlth. 343, 623 A.2d 921, *appeal denied,* 535 Pa. 642, 631 A.2d 1013 (1993), *and cert. denied,* 510 U.S. 1113, 114 S.Ct. 1057, 127 L.Ed.2d 378 (1994), that the application of Section 402(d) in unemployment proceedings is not preempted by federal labor law, and an award of unemployment benefits to locked-out employees is not an impermissible encroachment upon the NLRB's regulation of collective bargaining.

■ In order to determine a claimant's eligibility for benefits under Section 402(d), unemployment authorities must necessarily make findings as to the nature of the work stoppage (strike or lockout), the status quo extant immediately preceding the work stoppage and whether the claimant satisfied his or her burden of proving a willingness to continue to work under the status quo. These factual determinations are not only authorized but are mandated by court decisions that require unemployment authorities to determine the circumstances and conditions surrounding a work stoppage, whether those circumstances and conditions represent a strike or lockout, what conditions reflect the last actual, peaceable, uncontested status between the parties and whether the claimant has satisfied the burden imposed under Section 402(d), before eligibility may be determined. *See Miceli; Philco; Vrotney; Murdoca.* Employer's pre-emption arguments are unsupported by case law and are therefore rejected by the Court.[2]

■ To support its position that the Board erred in determining the validity of the 1994–1999 collective bargaining agreement, Employer repeats its argument that the Board lacked jurisdiction to decide whether bad faith bargaining occurred, and it also asserts that the fact that the ratified proposal had not been reduced to writing and signed has no legal significance. This latter position is based upon a March 18, 1994 memorandum

**2.** The representation made by Employer that the Board's decision improperly focuses in large measure on the Union's filing an NLRB complaint is totally unsupported by the record. The Board made references to the complaint but nowhere in the Board's opinion does it indicate that its determination that Employer engaged in misrepresentations and bad faith bargaining was based upon the Union's having filed its unfair labor practices complaint. The Board made fifty-eight findings of fact and presented a thorough discussion of its reasoning, and the only references to the Union's NLRB complaint were to note that one had been filed and that no hearing had been held on the complaint.

of agreement between the parties that Employer's proposal would become effective upon ratification by the Union membership. Employer further states that it was unnecessary for the Board to determine the validity of the 1994–1999 collective bargaining agreement because the parties established the status quo by operating under terms and conditions of the ratified proposal for eight months, from March to November 1994. Employer's arguments are unavailing because the Board, acting within its prerogative, found that the proposal was ratified based upon misrepresentations and bad faith bargaining by Employer and therefore concluded that the resulting agreement claimed to exist by Employer was of no legal effect.

■ The record supports the Board's findings that the Union continued to dispute its ratification of the proposal as effecting a valid collective bargaining agreement and that this purported agreement was not uncontested. Based upon evidence of Gorham's refusal to sign the ratified proposal until the disputed vote was resolved by the International Office, Gorham's subsequent discovery of Employer's misrepresentations concerning the pension fund proposal and Gorham's consequent rejection of the Union's ratification vote, Employer's claim that the Union acquiesced in the terms of the ratified proposal is simply not supported by the record. The principle that performance is acceptance does not fit this case; the cases cited by Employer, *Lewis v. Unemployment Compensation Board of Review*, 187 Pa. Superior Ct. 109, 144 A.2d 588 (1958), and *Grzech v. Unemployment Compensation Board of Review*, 56 Pa.Cmwlth. 9, 423 A.2d 1364 (1981), which enunciate this principle are therefore distinguishable and inapposite.

■ Citing authority from *NLRB v. Rockaway News Supply Co.*, 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832 (1953), Employer challenges the Board's power to invalidate the entire purported contract between the parties merely because a dispute or misunderstanding existed over the pension contribution issue. It is true that the Supreme Court in *Rockaway News* stated that a contract should not be removed from the hands of the parties where they simply "misunderstand" the legal limits of their bargain and that the excess provisions may be severed and invalidated, but not the entire contract. Nevertheless, that situation does not exist here, where the Board found that Employer's misrepresentations and bad faith bargaining tainted the ratification vote; it did not find that a misunderstanding between the parties tainted the vote. On this critical issue, the Supreme Court further stated in *Rockaway News* that there may be cases where a forbidden provision is so basic to and intertwined with the entire contract that it must stand or fall as a whole. The Board decided this precise point in favor of the Union.

■ Finally, the Court rejects Employer's argument that the Board erred in concluding that the work stoppage was a lockout rather than a strike. Employer posits that the Union ratified the March 1994 proposal despite Gorham's warning to the Union membership concerning the feasibility of the pension proposal, that the Union membership received and cashed a ratification bonus and never offered to return the funds and that the membership performed under terms of the ratified proposal for eight months and enjoyed its benefits. Consistent with this view, Employer claims that, contrary to the situation in *Murdoca*, where the employer unilaterally changed the wage structure during the current labor contract, Employer merely acted to implement terms of the ratified proposal by changing the employees' method of compensation. According to Employer, it repeatedly offered to resolve the pension issue and to continue under terms of the ratified proposal, but the Union insisted that the parties return to terms and conditions of the August 1991 extension agreement; by virtue of its work stoppage, the Union changed the status quo.

■ The Board accepted the testimony of Gorham as more credible than that of Palo, and, as the ultimate fact finder, the Board was free to accept or reject the testimony of any witness in whole or in part. *Greif v. Unemployment Compensation Board of Review*, 68 Pa.Cmwlth. 437, 450 A.2d 229 (1982). After evaluating the evidence and determin-

ing the credibility of witnesses, the Board determined that the status quo or last actual, peaceable and uncontested status between the parties was the August 1991 extension agreement, that Employer changed the status quo by its unilateral action in changing the method of compensation and that the Union was willing to continue to work under the status quo but that Employer refused to agree. The Court is of the opinion that the Board's findings of fact are supported by substantial evidence, and, consistent with case law, they are conclusive upon appellate review by this Court. For the reasons stated, the Court affirms the order of the Board that Claimant is not ineligible for benefits under Section 402(d) of the Law.

## ORDER

AND NOW, this 11th day of April, 1997, the order of the Unemployment Compensation Board of Review is affirmed.