Corine CHAVEZ (TOKEN), Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Ray Toter (Token), Petitioner,

v.

Unemployment Compensation Board
of Review, Respondent.

John Kashatus (Token), Petitioner,

v.

Unemployment Compensation Board
of Review, Respondent.

Joseph Belletiere (Token), Petitioner,

v.

Unemployment Compensation Board
of Review, Respondent.

Commonwealth Court of Pennsylvania.

Argued May 20, 1999.
Decided Sept. 23, 1999.

Claudia G. Lukert, Harrisburg, for petitioners.

Jeffrey I. Pasek, Philadelphia, for respondent.

Before DOYLE, J., SMITH, J., and NARICK, Senior Judge.

SMITH, Judge.

Corine Chavez, Ray Toter, John Kashatus, Joseph Belletiere and other similarly situated employees (Petitioners) appeal from an order by the Unemployment Compensation Board of Review (Board) that reversed the order of the referee and determined Petitioners ineligible for benefits. Petitioners request the Court to decide whether the Board erred in concluding that Petitioners were ineligible for benefits under Section 402(d) of the Unemployment Compensation Law (Law).[1] Petitioners also request the Court to decide whether the Board erred in allowing the Keystone Job Corps Center (Employer) to introduce new evidence and testimony after the record was closed and, in particular, whether the Board should have ruled on the admissibility of a National Labor Relations Board (NLRB) settlement agreement and Employer's testimony regarding the im-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(d).

pact of this settlement upon employees who were not parties to the agreement.

## I

Petitioners are employed as teachers by Employer. They are represented by the Pennsylvania Social Services Union, Local 668 of the Service Employees International Union, AFL–CIO (Union) in one of two bargaining units: the resident advisors unit and the professional unit. The Union began negotiations for an initial resident advisor contract with Employer in July 1997 and began negotiations for an initial professional unit contract in October 1997. There was no existing or recently expired collective bargaining agreement for either unit. During the course of negotiations, Employer made unilateral changes to the employee health plan and the employee handbook.

The new health plan provided only three health carriers rather than the four carriers previously provided; increased the employees' deductible from $200 to $500; increased the employees' maximum out-of-pocket cost from $2,200 to $3,000; ceased coverage of routine examinations and immunizations; altered the pharmacy plan by increasing the co-pay requirements; and moved the dental and short-term disability coverage into a separate plan. Under the old plan, Petitioners' cost for health insurance was $60.70 per month. Under the new plan, Petitioners' cost would be $23.80 biweekly (i.e., $51.57 per month) plus the cost of dental and short-term disability. The changes to the employee handbook prevented Petitioners from refusing work and proscribed Petitioners from posting or removing information from certain bulletin boards. Employer had promised its best efforts to provide six weeks of family and medical leave to its employees employed less than one year; however, the new handbook provided only that Employer would consider giving some family and medical leave to those employees. The new handbook also granted Petitioners bereavement leave.

Employer offered continued employment only under the terms of the new health plan and the new handbook, and as a result the Union commenced a work stoppage on June 2, 1998.

Petitioners filed timely applications for unemployment compensation benefits. The job center applied a Section 402(d) "strike/lockout" analysis to the facts of this case and denied benefits. Section 402(d) of the Law provides that an employee shall be ineligible for compensation for any week: "In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lockout) at the factory, establishment or other premises at which he is or was last employed...." The job center determined that Employer offered to provide work to Petitioners under the pre-existing terms and conditions of employment, and the job center concluded that the Union first altered the status quo by initiating a work stoppage.

Petitioners appealed the job center's decision, and an unemployment compensation referee reversed it. The referee concluded that this case is governed by the "substantial change" analysis under *Kaolin Mushroom Farms, Inc. v. Unemployment Compensation Board of Review*, 669 A.2d 438 (Pa.Cmwlth.1995). Although the substantial change analysis is generally more favorable to employers than the strike/lock-out analysis under *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 163 A.2d 91 (1960), the referee determined that Employer unilaterally imposed a substantial change and concluded that Petitioners were eligible for benefits. Employer appealed the referee's decision to the Board, which agreed with the referee that the appropriate analysis was whether Employer unilaterally imposed a substantial change. However, the Board determined that Petitioners "failed to establish that the changes in their health carrier and the changes in the handbook were so substantial as to justify the work stoppage." Board's decision, p. 4. This deter-

mination was based on the fact that Petitioners had "not testified that the changes in the health carriers substantially impacted their rate of pay" and the Board's inability to conclude that the changes in the handbook were unreasonable. *Id.* The Board accordingly reversed the referee's decision and denied benefits to Petitioners.[2]

## II

Petitioners first argue that the Court should apply the strike/lockout analysis to this case because they had formally selected a bargaining representative, which triggered Employer's obligation to bargain changes to the status quo. Strike/lockout analysis originates in *Vrotney,* where the Pennsylvania Supreme Court established the following test for determining whether a work stoppage results from a lockout or a strike:

> Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout' and the disqualification for unemployment compensation benefits in the case of a 'stoppage of work because of a labor dispute' does not apply.

*Vrotney,* 400 Pa. at 444–445, 163 A.2d at 93–94. *See also Philco Corp. v. Unemployment Compensation Board of Review,* 430 Pa. 101, 242 A.2d 454 (1968).

However, in *Kaolin Mushroom Farms, Inc.* the Court concluded that the strike/lockout analysis did not apply to a work stoppage initiated by workers who had no existing or recently expired collective bargaining agreement with their employer, although attempts were being made to unionize them. The Court explained:

> Our review of Pennsylvania Appellate Court decisions indicates that the strike/lockout analysis has only been applied where employees are represented by a bargaining unit, and there is an existing or recently-expired collective bargaining agreement. Application of a strike/lockout analysis in the absence of a collective bargaining agreement would mean that unrepresented employees who engage in a work stoppage because of any unilateral change imposed by an employer are eligible to receive unemployment compensation benefits. Such a result is unfair to employers because it prevents them from instituting even minor changes to the terms of employment without the consent of the employees. Accordingly, we hold that when unrepresented workers engage in a work stoppage because of a change in terms or conditions of employment, the appropriate inquiry is whether such change is substantial. Where employees who engage in a work stoppage establish that their employer unilaterally imposed a substantial change, they are eligible for unemployment compensation benefits.

*Id.* at 441–442. Petitioners maintain that *Kaolin Mushroom Farms, Inc.* should apply only to unrepresented workers who initiate a work stoppage. Petitioners reason that once workers are represented by a certified union, the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151–169, obligates the employer to bargain over any changes to wages, hours, terms and conditions of employment, thereby creating an identifiable status quo.

---

**2.** This Court's review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Chamoun v. Unemployment Compensation Board of Review,* 116 Pa.Cmwlth. 499, 542 A.2d 207 (1988).

■ Petitioners' reliance on the NLRA is misplaced. The NLRA is designed to regulate collective bargaining, whereas the principal objective of the Law is to alleviate economic distress in individual cases where employees become unemployed through no fault of their own. *See Odgers v. Com., Unemployment Compensation Board of Review,* 514 Pa. 378, 525 A.2d 359 (1987). Accordingly, the NLRA does not provide a persuasive model for the Court's interpretation of the Law. Moreover, if the Court were to adopt Petitioners' suggestion that the strike/lockout analysis be applied to the status quo mandated by the NLRA when federal law requires bargaining in good faith, then the Court would needlessly entangle this state's unemployment compensation jurisprudence with the complex body of federal law surrounding the NLRA. *See Keystone Coca–Cola Bottling Corp. v. Unemployment Compensation Board of Review,* 693 A.2d 637 (Pa. Cmwlth.1997), *appeal denied,* 553 Pa. 684, 717 A.2d 535, *and cert. denied,* —— U.S. ——, 119 S.Ct. 177, 142 L.Ed.2d 145 (1998).[3]

■ Although the Court's stated holding in *Kaolin Mushroom Farms, Inc.* is premised on the employees' lack of union representation, the rationale of the decision clearly hinges on the absence of a collective bargaining agreement. The Court expressed that rationale in the following language: "Application of a strike/lockout analysis *in the absence of a collective bargaining agreement* would mean that unrepresented employees who engage in a work stoppage because of any unilateral change imposed by an employer are eligible to receive unemployment compensation benefits." *Id.* at 441 (emphasis added). The Court concluded that such a situation would unfairly prevent employers from instituting minor changes to the terms or conditions of employment. Thus *Kaolin Mushroom Farms, Inc.* stands for the proposition that application of the strike/lockout analysis is unfair to employers whose employees are not represented by a union *because there is no collective bargaining agreement between employers and unrepresented employees.* The same unfair result follows whenever there is no prior collective bargaining agreement between the employer and the employees. Accordingly, the Court concludes that the Board properly applied the substantial change analysis to this case.

■ Petitioners next argue that the referee correctly concluded that Employer unilaterally imposed a substantial change.[4] The substantial change analysis is derived from Section 402(b) of the Law, 43 P.S. § 802(b), which permits employees to collect unemployment compensation benefits if they leave work for a necessitous and compelling reason.[5] An employer's unilateral imposition of a substantial change in the terms and conditions of employment provides a necessitous and compelling reason for employees to leave work. *Kaolin*

3. Correspondingly, the Court concludes that it need not address the Board's failure to rule on the admissibility of any evidence concerning an NLRB settlement agreement which did not involve Petitioners. In any event, no evidence concerning an NLRB settlement agreement would have been germane to the issues before the Board. *See Odgers; Keystone Coca–Cola Bottling Corp.* Moreover, there is no indication in the record that the Board considered or made any findings based upon such evidence.

4. Despite Employer's argument to the contrary, the question posed in Petitioners' brief is clearly broad enough to encompass this issue. The exact text of the question posed is: "Did the Unemployment Compensation Board of Review err when it concluded that the Employees are ineligible for benefits under Section 402(d) of the Pennsylvania Unemployment Compensation Law?" Petitioners' brief, p. 3.

5. Section 402(b) does not apply to this case because the case involves a labor dispute; however, the substantial change analysis which originates from the case law interpreting Section 402(b) is properly applied to the case. *Kaolin Mushroom Farms, Inc.* Therefore, the Court relies on case law interpreting Section 402(b) to determine whether Petitioners are entitled to benefits.

*Mushroom Farms, Inc.* Although the question is contingent upon the underlying facts found by the Board, the ultimate determination of whether an employer's unilateral change in the terms and conditions of employment is sufficiently substantial to provide a necessitous and compelling reason for employees to leave work is a question of law fully subject to this Court's review. *Pacini v. Unemployment Compensation Board of Review,* 102 Pa. Cmwlth. 355, 518 A.2d 606 (1986).

 There is no talismanic percentage to determine when an employer's unilateral changes in the terms and conditions of employment are substantial; rather, each case must be examined under its own attendant circumstances. *Steinberg Vision Assocs. v. Unemployment Compensation Board of Review,* 154 Pa.Cmwlth. 486, 624 A.2d 237 (1993). However, the inquiry must be focused on the impact that the modifications have upon the employees rather than focused on the employer's reasons for instituting the changes. *Id.* It is not a defense for the employer to merely establish that it had good reasons for the unilateral change. *Id.* Because there is no talismanic percentage for determining when a change is substantial, Petitioners were not required to produce specific testimony concerning the exact reduction in their rate of pay caused by changes in the health care plan. Moreover, the Board further erred in basing its substantial change analysis on the reasonableness of the changes to the employee handbook rather than focusing on the impact those changes had on the employees.

The Board's factual findings establish significant reductions in the health care benefits provided to employees, including the elimination of an entire program previously available to them, a 150 percent increase in the employees' deductible and the complete elimination of coverage for routine examinations and immunizations. The findings further establish significant unilateral changes to the employee handbook; among other things, the handbook was altered to eliminate Petitioners' prior option to refuse work. In light of these uncontested findings, the Court agrees with the referee's conclusion that Employer unilaterally imposed a substantial change in the terms and conditions of Petitioners' employment and that Petitioners are therefore eligible for unemployment compensation benefits. Accordingly, the order of the Board is reversed.

### ORDER

AND NOW, this 23rd day of September, 1999, the order of the Unemployment Compensation Board of Review is hereby reversed.