# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| William C. Thigpen, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 2426 C.D. 2014 |
| | : | Submitted: August 28, 2015 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| | : | |
| Respondent | : | |

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                   **FILED: September 29, 2015**

William C. Thigpen (Claimant) petitions, *pro se*, for review of an order of the Unemployment Compensation Board of Review (Board) affirming the decision of the referee that found Claimant ineligible for unemployment compensation benefits. The referee concluded that Claimant was discharged from his employment as a Program Counseling Coordinator with Pennsylvania CareerLink Chester County (Employer) for inappropriate behavior in the workplace, and that this violation amounted to willful misconduct under section 402(e) of the Unemployment Compensation Law (Law).[1] We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his or her unemployment is due to discharge for willful misconduct connected to his or her work. 43 P.S. § 802(e).

Claimant applied for unemployment benefits following his discharge from employment with Employer. The Department of Labor and Industry issued an August 29, 2014 determination finding him ineligible for benefits. (Record Item (R. Item) 6, Notice of Determination.) Claimant appealed, and a hearing was held before a referee on October 2, 2014, at which Claimant, without counsel, appeared; Employer was represented by counsel and presented four witnesses. (R. Item 11, Referee Hearing: Transcript of Testimony (H.T.).) Following the hearing, the referee issued an October 3, 2014 decision and order denying Claimant unemployment benefits. (R. Item 12, Referee Decision/Order.) Claimant appealed to the Board and the Board issued a December 10, 2014 order affirming the referee's determination, and adopting and incorporating the referee's findings and conclusions. (R. Item 14, Board's Order.) The findings of fact adopted by the Board were as follows:

1. Claimant worked full-time beginning on May 9, 2011 as a Program Counseling Coordinator until his last day worked on August 11, 2014, at a final salary of $45,431 per year.

2. On April 2, 2013, Employer warned Claimant about inappropriate behavior exhibited in the office.

3. On July 15, 2014, Claimant was required to attend a training given by a co-worker on a new filing system.

4. Employer was required to move from a single manila folder to a 6-section file which would contain additional paperwork. The Commonwealth of Pennsylvania was requiring the CareerLink to begin utilizing the 6-section filing system per client.

5. Prior to the training on July 15, 2014, the Director informed Claimant and others that they were required to implement this new system.

6. On July 15, 2014, during the training, Claimant appeared angry, interrupted the trainer, spoke over the trainer and was difficult. The trainer had allocated a half hour for the training but the training lasted over one hour because of Claimant's behavior.

7. The training group consisted of the trainer, Claimant and another individual.

8. After conducting the training, the trainer complained to her supervisor that she felt Claimant had bullied her during the training where she was just performing her job duties.

9. Employer discharged Claimant for inappropriate behavior exhibited during the meeting.

(R. Item 12, Findings of Fact (F.F.) ¶¶1-9.)

Claimant appealed the Board's decision and order to this Court.[2] The term willful misconduct is not defined within Section 402(e) of the Law, but has been interpreted by the courts to include: 1) wanton or willful disregard of the employer's interests; 2) deliberate violation of the employer's rules or directives; 3) disregard of the standards of behavior which an employer can rightfully expect from an employee; and 4) negligence demonstrating an intentional disregard of the employer's interest or the employee's duties and obligations. *Scott v. Unemployment Compensation Board of Review*, 36 A.3d 643, 647 (Pa. Cmwlth. 2012). Whether a claimant's conduct rises to the level of willful misconduct is a question of law that is subject to plenary review by this Court. *Orend v. Unemployment Compensation Board of Review*, 821 A.2d 659, 661 (Pa. Cmwlth. 2003).

---

[2] Our scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed and whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704; *Smithley v. Unemployment Compensation Board of Review*, 8 A.3d 1027, 1029 n.5 (Pa. Cmwlth. 2010).

The employer bears the burden of proving that the claimant was discharged for willful misconduct. *Greer v. Unemployment Compensation Board of Review*, 4 A.3d 733, 736 (Pa. Cmwlth. 2010). When the alleged willful misconduct involves the violation of a work rule or policy, the employer must prove the existence of the rule, the reasonableness of the rule, and the fact of the claimant's violation. *Lewis v. Unemployment Compensation Bd. of Review*, 42 A.3d 375, 377 (Pa. Cmwlth. 2012); *Brady v. Unemployment Compensation Board of Review*, 539 A.2d 936, 938 (Pa. Cmwlth. 1988). Once an employer has proved the violation of the work rule or policy, the burden then shifts to the claimant to prove that he or she had good cause for the violation. *Bell Socialization Services v. Unemployment Compensation Board of Review*, 74 A.3d 1146, 1147 (Pa. Cmwlth. 2013). The claimant establishes good cause where he or she demonstrates that the actions are justified or reasonable under the circumstances. *Id*. at 1147-48.

Before this Court, Claimant denies that he engaged in confrontational behavior at the training session. Claimant further argues that if his behavior at the training session was inappropriate, it was far less inappropriate than that of the CareerLink managers and colleagues who, he contends, uttered derogatory names to describe their clientele. He seeks to justify his behavior at the training session by explaining that he was trying to save Chester County taxpayers the expense of redoing a project that he asserts failed miserably two years before. He also states that excessive stress he felt at work was due to management's failure to implement his suggestions on how the workplace should be run, and the changing environment at the workplace since its move, in summer 2014, from Coatesville to Exton. Claimant also suggests that had Employer taken action to address his health problems, including high blood pressure, anxiety and depression, the

4

training session incident would not have occurred; he argues that two proffered letters, one from his treating physician and one from a Crisis Specialist at the crisis residential facility where he was treated following his termination from employment should have been admitted into evidence at the referee hearing.

Before the referee, Employer presented the testimony of the Site Administrator, who was Claimant's direct supervisor. The Site Administrator testified that there were numerous occasions when he had met with Claimant to discuss his inappropriate behavior and its impact on office operations, and referred specifically to events in March 2013 that triggered the issuance of what was termed a "last chance agreement" or "continuation of employment agreement" that the Site Administrator sent to Claimant on April 2, 2013. (H.T. at 13-14.) This document sets forth three incidents during which Claimant was described as argumentative and combative while discussing work processes. (R. Item 11, Employer Exhibit 1.) The document states that if Claimant fails to improve in the areas outlined, or "ever act[s] again in a manner that can be considered hostile, offensive or antagonistic toward a county employee…further disciplinary action up to and including termination may occur." (*Id*.)

Employer also presented the testimony of the two other employees, each a Program Coordinator, who were present at the training meeting that triggered Claimant's dismissal for inappropriate behavior. This meeting was held for the purpose of introducing procedural programming changes mandated by the Commonwealth, with explanation of new forms. (H.T. at 14.) One of the Program Coordinators was acting as program monitor for the mandated changes and was charged with conducting the meeting; she stated that Claimant resisted the changes and was belligerent and argumentative throughout, yelling at times and leaving her

5

shaken. (H.T. at 19-22.) The other Program Coordinator confirmed that Claimant was very angry, would not listen and continually spoke over the voice of the training leader. (H.T. at 27.) The Director of the County Workforce Investment Board, who signed the April 2013 warning letter and participated in the July 2014 meeting during which Claimant was notified that his employment was terminated, testified that one week prior to the training meeting he met with Claimant and the other Program Coordinators to communicate that the training was going to occur and identify who would be leading the training. (H.T. at 6.) The Director stated that he clearly communicated to Claimant and the other employees his expectation that they would cooperate to create and maintain the new filing system in compliance with the Commonwealth's directives. (H.T. at 6-7.)

Before the referee, Claimant acknowledged his frustration with the mandated changes and with his duties at work generally,[3] and testified as to his belief that there would not be sufficient time or adequate workforce to accomplish the changes; however, he denied having bullied or intimidated his fellow employees during the training meeting. (H.T. at 33-36.) The referee questioned Claimant as to whether he informed Employer during his employment of any medical condition or issues; Claimant answered "no," stating that four other employees, all, like Claimant, over the age of 60 had been terminated for absences from work due to medical conditions and he felt he could not speak to Employer about his health issues. (H.T. at 37.) The referee did not admit the letters from

---

[3] Claimant testified that since the CareerLink office had been moved from Coatesville to Exton and the numbers of clients able to access the new location had dropped, there had been a directive to begin accommodating clients from halfway houses, methadone clinics, and shelters; he stated that his job had been to find training for clients, but these new clients had no intention of getting a job, nor were there budget funds to pay for training these individuals. (H.T. at 36.)

Claimant's physician and the crisis residential facility into evidence, indicating that they were prepared after the date of Claimant's discharge from employment. (*Id*.)

Here, it is undisputed that Claimant was warned in April 2013 that any future hostile, offensive or antagonistic behavior in the workplace could result in the termination of his employment. The Board found that Claimant's actions during the July 2014 training session must be considered a deliberate violation of Employer's directive. We are bound to examine the testimony in the light most favorable to Employer, in whose favor the Board found, giving it the benefit of all inferences that can logically and reasonably be drawn from the testimony. *Spencer v. Unemployment Compensation Board of Review*, 602 A.2d 484, 485 (Pa. Cmwlth. 1992).

We conclude that Employer established willful misconduct via violation of a known work directive and that he exhibited behavior clearly contrary to Employer's interests in maintaining a positive work environment. We must therefore determine whether Claimant established good cause for his actions, and here, we find Claimant's various arguments to be without merit. Employer was required, and Claimant was aware that Employer was required under Commonwealth mandate, to implement the filing system changes which Claimant vehemently resisted. Claimant's belief that the mandated changes were burdensome and unnecessary cannot justify his aggressive behavior towards his colleagues at the training meeting. The record contains no testimony, and there is simply no evidence to support Claimant's assertion that Employer's management uttered derogatory remarks about its clientele, and thereby exhibited more inappropriate actions than those exhibited by Claimant or, as Claimant also

7

speculated, that Employer was attempting to terminate Claimant's employment before he could submit a request for an extended absence due to illness.

Claimant admitted at the referee hearing that he did not inform Employer of any medical conditions that may have impacted his performance at the workplace. Therefore, we find no merit in his contention that Employer knew about his health issues, and could have prevented the incidents that occurred at the training session had it addressed them. Nor is there evidence that he could not report health issues. To the contrary, the "last chance agreement" signed by Claimant states "[t]he County's Employee Assistance Program, Health Advocate, Inc. can be confidentially reached to assist you by calling [phone number] to discuss your continued inability to deal with people in the workplace." (R. Item 11, Employer Exhibit 1.) Furthermore, in correspondence to the referee prior to the hearing, Claimant states that he is not using the fact that he was seeking professional help for his depression as an excuse for his actions, but rather to shed light on his situation. (R. Item 10, Additional Claimant Information.)

The referee likewise did not err in denying admission of the letters that Claimant sought to have admitted into evidence. These documents could not have constituted evidence sufficient to establish justification for Claimant's inappropriate behavior on July 15, 2014. One document consists of a single-sentence letter verifying that Claimant was treated for severe depression, stress, and anxiety at a crisis residential facility for a nine-day period; however, this treatment began one month after his termination from employment. (*Id.*) The other document, a letter dated approximately one month following Claimant's termination from employment, indicates that Claimant had been seen at the physician's office on a regular basis for treatment and management of

8

"hypertension, asthma, psoriasis, osteoarthritis, depression and obesity;" the period of treatment is not set forth in the letter. (*Id.*)

While this Court has held that physical illness and its attendant circumstances can constitute good cause for violating an employer's policy, *Thompson v. Unemployment Compensation Board of Review*, 723 A.2d 743, 744-45 (Pa. Cmwlth. 1999), Claimant in no way establishes that his depression, a condition he admits he concealed from his Employer, was the cause of inappropriate behavior on his part. The record supports the Board's finding that after receiving an explicit warning about argumentative and combative behavior in the workplace in violation of department policy, Claimant again exhibited such behavior in a meeting, resulting in the termination of his employment for willful misconduct. Accordingly, we affirm.

_____
**JAMES GARDNER COLINS, Senior Judge**

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William C. Thigpen, : 
 : 
      Petitioner : 
 : 
      v. : No. 2426 C.D. 2014
 : 
Unemployment Compensation : 
Board of Review, : 
 : 
      Respondent : 

## O R D E R

AND NOW, this 29th day of September, 2015, the Order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.

_____

**JAMES GARDNER COLINS, Senior Judge**