Arthur John Greif, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs to Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

438

*Arthur John Greif,* for himself.

*Charles G. Hasson,* Assistant Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, September 10, 1982:

Claimant Arthur J. Greif appeals an order of the Unemployment Compensation Board of Review which affirmed a referee's decision denying claimant benefits under the Unemployment Compensation Law,[1] on the basis of a voluntary quit.

The claimant was employed as a staff attorney for the Pittsburgh regional office of the Pennsylvania Human Relations Commission (employer). On Sunday night, August 3, 1980, claimant returned to Pittsburgh from a vacation, went to his office and wrote a disjointed, two-page, "resignation" memorandum, which he time-stamped at 5:21 a.m., on August 4. The claimant's supervisor received the "resignation" at the beginning of normal office hours, on August 4. The employer did not immediately accept the claimant's resignation.

On August 6, the claimant was arrested for disorderly conduct, and on August 8, the claimant was involuntarily committed for psychiatric treatment.

On August 18, the employer's regional director decided to treat the claimant as terminated, and the claimant's supervisor so informed him. On August 26, the employer mailed a termination letter, dated August 19, 1980, to the claimant. The letter, which

---

[1] Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§751-770.

claimant received on August 28, states that "Ms. Doyle informed us that you advised her that you did not know when, if ever, you would be able to return to the Commission."

The referee concluded that the claimant's failure to give the employer a commitment to return was a voluntary quit. We must decide whether the referee capriciously disregarded competent evidence in making the crucial finding, adopted by the board, that "the claimant gave the employer no commitment of his desire to return to work."[2]

The record establishes that, on August 14, the claimant called the regional director from the hospital. As to that conversation, both the regional director and the claimant agreed that the claimant said he would be able to return to work on September 2, but that he planned to leave the commission in mid-January, 1981.

On August 17, the claimant's supervisor called the claimant at the hospital. The supervisor testified that the claimant then indicated that he did not really want to come back because he was afraid that his involuntary commitment would be used against him.

---

[2] Although the referee's discussion added that the Commission representative proceeded to "accept the resignation," no formal finding was made with respect to the written resignation. As a result of a medical report, accepted into the record, there is evidence that the claimant was not competent when he made the written resignation. Moreover, the board, in its brief, acknowledges that the claimant was mentally impaired at that time, by stating the issue as follows:

When the Claimant, who had submitted a written resignation *while in an impaired mental state*, then later, after treatment and being certified as able to return to work, failed to give the Employer a commitment that he desired to continue employment, such action was without a necessitous and compelling reason mandated by Section 402(b) of the Law, 43 P.S. §802(b). (Emphasis added.)

The claimant testified that he told his supervisor that he did not know when he would be released.

The referee apparently based the finding on the testimony of the claimant's supervisor. The supervisor testified that:

> [I] guess I was the first one to bring it up, I said I guess you, I did mention that he had economic problems that I said to Mr. Greif that unemployment was a possibility. I said, I asked him would it be fair to say that you didn't know when you were coming back and or if you ever come back and he said yes that would fair to say, possibly that would be grounds for unemployment and that might resolve all of our problems. Because I can understand that you don't have money, you know the state doesn't have disability.

The supervisor's testimony, although contradicted, was clearly competent.

The Unemployment Compensation Board of Review is the ultimate factfinder and may accept or reject the testimony of any witness, in whole or in part. Although we might have viewed the facts otherwise, we must accept the referee's findings as adopted by the board.[3] *Edna Slayton v. Unemployment Compensation Board of Review,* 58 Pa. Commonwealth Ct. 120, 427 A.2d 322 (1981).

Accordingly, we affirm.

ORDER

Now, September 10, 1982, the order of the Unemployment Compensation Board of Review at Decision No. B-194112, dated April 6, 1981, is hereby affirmed.

---

[3] At the hearing, the referee permitted the employer to examine the claimant's witnesses first, which was improper. A review of the record shows, however, that the claimant was not limited in the scope of his examination. We find that the claimant was not prejudiced by the order of witness examination.