# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Desiree J. Khouri,                          :
                                            :
                    Petitioner              :
                                            :
        v.                                  :     No. 1352 C.D. 2015
                                            :
Unemployment Compensation                   :     Submitted:  January 29, 2016
Board of Review,                            :
                                            :
                    Respondent              :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                 **FILED:  April 8, 2016**


Desiree J. Khouri (Claimant) petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board) affirming a UC Referee's (Referee) Decision finding Claimant ineligible for UC benefits pursuant to Section 402(e) of the UC Law (Law).[1]  On appeal, Claimant argues that the Board erred in finding willful misconduct because the finding was based on

---

[1] Act of December 5, 1936, Second Ex. Sess. P.L. (1937) 2897, as amended, 43 P.S. § 802(e).  Section 402(e) provides, in relevant part, that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which h[er] unemployment is due to h[er] discharge or temporary suspension from work for willful misconduct connected with h[er] work."  Id.

conjecture and not supported by substantial evidence. Discerning no error, we affirm the Board's Order.

Claimant filed for UC benefits after she was terminated on March 17, 2015 by C&J Catering LLC (Employer) for violating Employer's policies by sending "proprietary information to her home e-mail address." (Board Decision, Findings of Fact (FOF) ¶¶ 1, 18.) On April 22, 2015, the UC Service Center issued a Notice of Determination finding Claimant ineligible for benefits under Section 402(e). (Notice of Determination, R. Item 5.) Claimant appealed, and a hearing was held before a UC Referee at which both Claimant and Employer were represented by counsel. Employer presented documentary evidence and the testimony of its Human Resources Director (HR Director), and Claimant testified on her own behalf.

The Referee issued a decision affirming the finding that Claimant was ineligible for benefits based on willful misconduct. (Referee Decision, R. Item 13.) Claimant filed a timely appeal to the Board. Based on the evidence presented, the Board made the following findings of fact:

1. The [C]laimant was last employed as a full-time wedding and event coordinator by [Employer] from January 13, 2014 at a final rate of $14.42 an hour and her last day of work was March 17, 2015.

2. The [E]mployer coordinates weddings, special events, and corporate events.

3. The [E]mployer prohibits an employee from disclosing or using confidential or proprietary information without authorization. In addition, the [E]mployer prohibits an employee from misusing,

2

destroying or stealing company property or another person's property. Violating the employer's policies can result in termination of employment.

4. The [C]laimant was aware or should have been aware of the [E]mployer's policies.

5. The [C]laimant signed an employment agreement defining confidential information as "any data information that is [of] value [to Employer] and is not generally known to its competitors."

6. On September 16, 2014, the [E]mployer's CEO sent an e[-]mail to all employees reiterating that no employee may use [Employer] property (including computers, pagers, telephones, cellphones, copies, faxes, Internet services, and printers) for personal use unless specific permission has been granted by the department's employee's head [sic].

7. In March of 2015, and during a routin[e] monitoring, the [E]mployer became aware that the [C]laimant was e-mailing company policies and sensitive information to her own home e-mail address.

8. In a span of five days, the [C]laimant e-mailed to herself company proprietary information; specifically procedures on how to lead and plan a wedding.

9. The information that [C]laimant e-mailed to herself would be information a competitor would be interested in obtaining.

10. The [C]laimant e-mailed some of the information to her[self] while she was at her workstation.

11. On March 17, 2015, the [E]mployer's director of human resources along with the CEO met with the [C]laimant. The [C]laimant alleged that she accidentally forwarded the information to her home e-mail address.

12. The e-mails that the [C]laimant sent to her home e-mail address were found in the [E]mployer's archive file because the [C]laimant deleted them from her sent file folder.

3

13. When asked why she deleted the e-mails from her sent file folder, the [C]laimant alleged she must have done it by accident, and she could not remember why she did so.

14. The [C]laimant never stated that she needed the information when she was interacting with customers.

15. The [C]laimant had the ability to access her work e-mail on her cell-phone while interacting with customers.

16. The [C]laimant's sister previously worked for the [E]mployer.

17. At the time the [C]laimant forwarded the e-mails to her home e-mail address the [C]laimant's sister was having a UC hearing on her claim for benefits.

18. The [C]laimant was discharged for violating the [E]mployer's policies; and specifically because she sent the [E]mployer's proprietary information to her home e-mail address.

(Findings of Fact (FOF) ¶¶ 1-18.)

The Board specifically resolved the conflicts in the testimony in favor of the Employer. (Board Decision at 3.) Acknowledging Claimant's testimony "that she forwarded the e-mails to her home e-mail because she used her cell phone to access the e-mails when . . . meeting with clients" and "in order to do her job at home," and "that she did not know that she was doing anything wrong," the Board stated it specifically did not find that testimony credible. (Board Decision at 3.) The Board explained that Employer's witness credibly testified that, when confronted, Claimant did not state that she needed this information when meeting with clients. The Board also found the fact that "[C]laimant deleted the e-mails from her sent file folder after" sending them to herself, supported its determination that her "actions were intentional and deliberate in nature and [ ] done with the

4

consciousness of wrongdoing." (Board Decision at 3.) The Board, therefore, concluded that Claimant's actions amounted to willful misconduct. Claimant now petitions this Court for review.[2]

On appeal, Claimant argues that the Board erred:[3] (1) in finding that "Claimant had access to her work e-mail while interacting with customers"; (2) "in not finding that . . . Claimant regularly sent work[-]related e-mail to herself"; and (3) "in finding that Claimant was discharged because she sent Employer's proprietary information to her home e-mail address." (Claimant's Br. at 10, 12-13.) Claimant contends that there was no evidence that "simply sending information that is readily available to employees is a violation of company policy," without the misuse of that information. (Claimant's Br. at 15.) Therefore, Claimant contends that her actions do not constitute willful misconduct.

We first address Claimant's argument that there is not substantial evidence in the record to support the Board's finding that Claimant had access to her work e-mail while interacting with customers. "It is now axiomatic in an unemployment compensation case, that the findings of fact made by the Board, or by the referee as the case may be, are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings." Taylor v. Unemployment

---

[2] Our scope of review "is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." Johns v. Unemployment Compensation Board of Review, 87 A.3d 1006, 1009 n.2. (Pa. Cmwlth.), petition for allowance of appeal denied, 97 A.3d 746 (Pa. 2014).

[3] We have reordered Claimant's arguments for ease of discussion.

Compensation Board of Review, 378 A.2d 829, 831 (Pa. 1977). Substantial evidence is defined as "relevant evidence upon which a reasonable mind could base a conclusion." Johnson v. Unemployment Compensation Board of Review, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). Questions of credibility and the resolution of conflicts in the evidence are solely within the Board's discretion. Peak v. Unemployment Compensation Board of Review, 501 A.2d 1383, 1388 (Pa. 1985). The Board is free to "accept or reject the testimony of any witness, in whole or in part." Greif v. Unemployment Compensation Board of Review, 450 A.2d 229, 230 (Pa. Cmwlth. 1982). "The fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the Board, is not grounds for reversal if substantial evidence supports the Board's findings." Tapco, Inc. v. Unemployment Compensation Board of Review, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Moreover, even if evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence. Johnson v. Unemployment Compensation Board of Review, 504 A.2d 989, 990 (Pa. Cmwlth. 1986).

Claimant specifically challenges finding of fact 15, that "[C]laimant had the ability to access her work e-mail on her cell-phone while interacting with customers." (FOF ¶ 15.) Claimant argues that there is no evidence in the record to support that finding and that Claimant's contrary testimony was not contradicted. Our review of the record reveals that this finding is supported by credible evidence.

6

HR Director testified that "employees have access to their [work] e[-]mail remotely at home, so sending it to her personal e[-]mail account wouldn't even be necessary because she could access it from her [work] e[-]mail at home. . . ." (Hr'g Tr. at 15, R. Item 12.) HR Director further testified that she has the same remote access on her phone, and described how to access the e-mail, that all of the folders are available, and testified that was how she accessed her work e-mail. (Hr'g Tr. at 25-26.) Claimant testified that she had a smart phone, but that depending on the venue, she could not access her work e-mail "all the time." (Hr'g Tr. at 22-23.) However, Claimant also testified that, if she did not have internet access at a location, she would not be able to access her personal e-mail account either. (Hr'g Tr. at 23.)

Claimant concedes that the Board resolved all conflicts in the evidence in favor of Employer, finding Employer's witness credible, and acknowledges that it is not for this Court to reweigh the evidence or make credibility determinations. (Claimant's Reply Br. at 1.) However, Claimant contends that Employer's witness did not have the knowledge or expertise to make a statement supporting that Claimant had the ability to access her work e-mail on her smart phone when interacting with customers. Claimant invites the Court to utilize its own "every day experience" to determine that "it is not possible to always have access to our e[-]mail." (Claimant's Reply Br. at 2.) Claimant, therefore, argues that the Board "properly" had before it only Claimant's uncontradicted testimony that she could not always access her e-mail.

"In determining whether substantial evidence exists to support the Board's findings, we . . . examine the testimony in the light most favorable to the prevailing party below, giving that party the benefit of any inference which can be drawn logically and reasonably from the evidence." Johnson, 502 A.2d at 740. In addition, "[t]he Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight." Walsh v. Unemployment Compensation Board of Review, 943 A.2d 363, 368 (Pa. Cmwlth. 2008).

When viewing the evidence presented in this matter in the light most favorable to Employer, we conclude that the Board's finding of fact rested on substantial evidence. The Board reconciled the conflicting evidence by finding the Employer's witness credible and chose to not credit Claimant's testimony. Although Claimant has valiantly tried to frame her argument as something other than one based on the credibility of the witness, we cannot accept the invitation to utilize our experience to reverse what is fundamentally a credibility finding. We do not read the Board's finding as indicating that it is always possible to access e-mail. Instead, to the extent Claimant argued that she needed to send the Employer's information to her personal e-mail address so she could access it, Employer testified that the information was similarly available without accessing it from her personal e-mail address, and Claimant conceded that she could no more easily use her phone to access her personal e-mail account than she could access her work e-mail account. Claimant is essentially arguing that we should reweigh the evidence in her favor, which we cannot do. Johnson, 502 A.2d at 740.

Next, we address whether the Board erred by concluding that Claimant's actions constituted willful misconduct. Claimant argues the Board erred in not finding that Claimant regularly sent work-related e-mail to her personal e-mail, and, thus, the e-mails that she sent during the period of time at issue did not constitute willful misconduct. This is interrelated with Claimant's argument that the Board committed an error of law in finding that Claimant was discharged because she sent Employer's proprietary information to her home e-mail address.

Section 402(e) of the Law provides, "[a]n employe shall be ineligible for compensation for any week . . . [i]n which h[er] unemployment is due to h[er] discharge or temporary suspension from work for willful misconduct connected with h[er] work." 43 P.S. § 802(e). The Law does not define willful misconduct; however, numerous decisions of this Court have defined the term as:

> (1) the wanton and willful disregard of the employer's interest, (2) the deliberate violation of rules, (3) the disregard of standards of behavior which an employer can rightfully expect from his employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employer's duties and obligations.

Allen v. Unemployment Compensation Board of Review, 638 A.2d 448, 450 n.3 (Pa. Cmwlth. 1994) (internal quotation and citation omitted). Because an employer has a right to expect that its employees follow standards of behavior established by an employee code of conduct or other rules, a violation of work rules or employers' policies may constitute willful misconduct. Caterpillar, Inc. v. Unemployment Compensation Board of Review, 654 A.2d 199, 201 (Pa. Cmwlth. 1995).

9

When discharging an employee for violating an employer's rule, the employer must establish "the existence of the work rule, the reasonableness of the rule, the claimant's awareness of the rule, and the fact of its violation." Adams v. Unemployment Compensation Board of Review, 56 A.3d 76, 79 (Pa. Cmwlth. 2012). A reasonable work rule is one which is fair and just under the circumstances "and appropriate to accomplish a legitimate interest of the employer." Derry v. Unemployment Compensation Board of Review, 693 A.2d 622, 625 (Pa. Cmwlth. 1997). Once the employer has established the four prongs, "[t]he burden of proof shifts to the employee to prove that she had good cause for her actions." Chapman v. Unemployment Compensation Board of Review, 20 A.3d 603, 607 (Pa. Cmwlth. 2011). While the Board is the ultimate fact finder, whether an employee's conduct, as described by the facts credited by the Board, constitutes "willful misconduct is a matter of law subject to this [C]ourt's review." Walsh, 943 A.2d at 368.

Claimant worked for a catering company, which focused on weddings, special events, and corporate events, as a coordinator. (FOF ¶¶ 1, 2.) Claimant does not dispute that she forwarded Employer's policies and other information to her personal e-mail account. (FOF ¶¶ 7-9, 18.) HR Director testified that the information Claimant sent to her personal e-mail account was a "blueprint" on how Employer runs its business, and that a competitor would be "very interested" in this information.[4] (Hr'g Tr. at 13.) Employer discovered these e-mails in an

---

[4] The documents and attachments Claimant e-mailed to herself included: "the roles and responsibilities of a Wedding Event Planner"; "the roles and responsibilities of a Wedding

*(Continued…)*

archive file, because Claimant had deleted them from her sent file folder; these were the only e-mails that Claimant had deleted. (FOF ¶ 12; Hr'g Tr. at 14.) HR Director testified that Claimant signed an Employment Agreement, which provided as follows:

> EMPLOYEE will not, while employed by [Employer], or at any time thereafter, except as expressly authorized or directed by [Employer], use, copy, duplicate, transfer, transmit, disclose, or permit any other person access to, any Confidential Information of [Employer.]

(Hr'g Tr. at 9-10; Employment Agreement, Employer's Ex. 3 at 2.) In addition, HR Director testified that Employer also has a policy prohibiting disclosing or using confidential information without authorization. (FOF ¶ 3; Hr'g Tr. at 9-10.)

Claimant argues that she did not violate the policy. She contends that she regularly sent work-related e-mail to her personal e-mail, and that since Employer stated that it routinely monitored "all network communications," (FOF ¶ 7, Hr'g Tr. at 10-11), and did not contradict her, this testimony is supported. However, there is no credited evidence in the record that Claimant gave this reason when confronted by Employer and, more importantly, the Board "is free to reject even uncontradicted testimony." Daniels v. Unemployment Compensation Board of Review, 755 A.2d 729, 731 (Pa. Cmwlth. 2000). Claimant also argues that there is no evidence that Claimant disclosed or otherwise misused Employer's information in violation of the policy. However, it is undisputed that Claimant, within a five-

---

Lead"; "the roles and responsibilities of a Wedding Administrator"; "the roles and responsibilities of a Wedding Event Planner/Lead"; "the Event Planner and Event Administrator Paperwork Checklist"; "the Event Lead Paperwork Checklist"; and "how do I get paid." (Hr'g Tr. at 20.)

day period, forwarded Employer's proprietary and confidential information outside Employer's system to her personal e-mail account. The Employment Agreement signed by Claimant defined confidential information as "any data information that is of value to [Employer] and is not generally known to its competitors." (Employment Agreement, Employer's Ex. 3 at 2.) There is, thus, credited evidence of Employer's policies and Claimant's violation thereof.

Because Employer successfully carried its burden to establish termination for willful misconduct, the burden shifts to Claimant to demonstrate she had good cause for violating the rule. Chapman, 20 A.3d at 607. Here, Claimant testified that she forwarded the e-mails so she could access them when she met with clients, and so she could complete work at home. (Hr'g Tr. at 18-20.) She also argues that she did not know that she was doing anything wrong since she routinely sent work-related e-mail to her personal e-mail, and had never been told it was not permitted. The Board did not find Claimant credible. The Board explained that it did not find Claimant credible because she did not provide these explanations to Employer, when confronted, about the e-mail, and moreover, she deleted only these e-mails from her sent e-mail folder. These reasons support the Board's determination. The Board may assess the credibility of a witness, determine the weight to be accorded to the testimony and accept or reject the testimony of a witness in whole or in part. Greif, 450 A.2d at 230. Because the Board rejected Claimant's reasons for engaging in the conduct, Claimant has not shown good cause for her actions.

Because Employer met its burden to show a violation of a reasonable rule and Claimant failed to provide good cause for her actions, the Board did not err by

12

concluding that Claimant was discharged for willful misconduct and is, therefore, ineligible for UC benefits pursuant to Section 402(e) of the Law.

Accordingly, the Order of the Board is affirmed.

_____
**RENÉE COHN JUBELIRER, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Desiree J. Khouri,                          :
                                            :
                        Petitioner          :
                                            :
            v.                              :     No. 1352 C.D. 2015
                                            :
Unemployment Compensation                   :
Board of Review,                            :
                                            :
                        Respondent          :

# **O R D E R**

    **NOW**, April 8, 2016, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is **AFFIRMED.**

 

                                     _____
                                      **RENÉE COHN JUBELIRER, Judge**