IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Washington Health System,           :
                        Petitioner   :
                                     :
            v.                       :    No. 886 C.D. 2019
                                     :    ARGUED:  February 13, 2020
Unemployment Compensation Board      :
of Review,                           :
                        Respondent   :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge (P.)
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  May 11, 2020**


            Washington Health System, Employer, petitions for review of a June

2019 order of the Unemployment Compensation Board of Review that vacated its

November 2018 order[1] and held that Kitty Moriarty, Claimant, was not ineligible for

unemployment compensation benefits under Section 402(e.1) of the Unemployment

Compensation Law (Law) (discharge from employment for failure to submit to

and/or pass a drug test).[2]  We affirm.

------

[1] Claimant petitioned for review to this Court from the Board's November 2018 determination of ineligibility.  Upon the Board's application and with Claimant's agreement, this Court remanded the matter to the Board for reconsideration of its prior decision based on the entire record.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e.1).  Section 402(e.1) was added by Section 3 of the Act of December 9, 2002, P.L. 1330, and became effective immediately.

Claimant worked full-time for Employer as a licensed occupational therapist from November 2015 to March 2018. (Board's June 18, 2019 Decision, Finding of Fact "F.F." No. 1.) On March 26, 2018, Employer asked Claimant to submit to a random drug test pursuant to its Drug and Alcohol Free Workplace Policy.[3] The policy "provides that being under the influence of drugs or having drugs in one's system while at work is grounds for disciplinary action up to and including discharge." (F.F. No. 2.) The definition of "drug" is "any substance producing effects on the central nervous system, or any controlled substance." (F.F. No. 3.) The definition of "under the influence" is "any amount that is capable of rendering a positive result in any drug test." (*Id*.) Additionally, even though the policy does not prohibit the legal use of prescription or non-prescription drugs, it "requires that all employees disclose to the employer when taking any drug that poses a significant risk of substantial harm to the health or safety of the individual or others, or when taking any drug that renders the employee unable to perform the essential functions of the job." (F.F. No. 4.)

Before administration of the test, Claimant disclosed that she was taking Cannabidiol (CBD) oil, which she purchased over-the-counter to manage her cancer-related symptoms. (F.F. No. 7.) After "[E]mployer notified the [C]laimant

---

[3] (October 2017 Policy, Employer's Separation Information, Exhibit 10; Reproduced Record "R.R." at 21a-26a.) Although Claimant testified that she had never seen the policy document dated October 2017, she acknowledged receipt of the policy by signature dated November 30, 2015, and agreed to follow it. (F.F. No. 6.) Employer's witness testified that the only updates that Employer made to its policy in 2017 involved a percentage change and a name change to Washington Health System. (May 17, 2008, Hearing, Notes of Testimony "N.T." at 6; R.R. at 62a.) The witness stated that Employer communicated these updates to all of its employees. In any event, Claimant acknowledged that she was aware that Employer could test her for drugs and that it could discharge her from employment for a positive test result. (*Id*. at 13; R.R. at 69a.)

2

that her drug test was positive for marijuana[,]"[4] it immediately suspended her employment for violation of the policy. (F.F. No. 9.) Subsequently, Employer terminated Claimant's employment. The local job center found Claimant to be ineligible for benefits under Section 402(e.1) of the Law. Claimant appealed. A referee held a hearing at which Employer's human relations partner, Katie Barron, testified on behalf of Employer. Claimant appeared with counsel.

Barron testified that Employer discharged Claimant from employment when the results of a random drug test came back positive for marijuana. Claimant's discharge was automatic in view of the fact that Employer had provided her with a final written warning for an unrelated November 2017 infraction. (May 17, 2018, Hearing, Notes of Testimony "N.T." at 4; Reproduced Record "R.R." at 60a.) Barron stated that even though there was a period during which Claimant could have contacted her and provided additional information, Claimant did not do so. (*Id.* at 5; R.R. at 61a.) However, Barron acknowledged that Claimant requested a second drug test and wrote comments on Employer's discipline counseling record.[5] In any event, Employer did not submit documentation of the test results into evidence. When Barron started to testify as to what someone at Clinical Reference Lab, the third-party testing agency, told her with respect to the test results, counsel for Claimant made a hearsay objection. The referee sustained that objection. (*Id.*)

On cross-examination, Barron testified that under Employer's policy, grounds for disciplinary action include being under the influence of alcohol or drugs, or having drugs in one's system while on Employer's premises or work sites. Barron

---

[4] (F.F. No. 8.)

[5] (March 26, 2018, Discipline Counseling Record, Employer's Separation Information, Exhibit 9; R.R. at 19a-20a.) Claimant commented that she did not do drugs and that she started taking CBD oil to help with the long-term, residual effects of cancer surgeries and chemotherapy. Additionally, she wrote that she advised the nurse of that fact before the drug test.

testified that Claimant had been taking CBD oil. Noting that Claimant worked in patient care, Barron opined that Claimant would pose a significant risk to herself, other employees, and patients if she was under the influence of drugs. However, Barron did not present evidence that Claimant's ingestion of CBD oil would affect or did affect her performance in ways prohibited by the policy.

Additionally, Barron emphasized the aforementioned definitions of "drug" and "under the influence." Further, she acknowledged that the policy does not prohibit the *legal* use of medications containing alcohol or the *legal* use of drugs. However, the policy requires all employees to disclose such use to Employer, in advance of working. Section C of the policy (Legal Medications/Drugs) states in part:

> This Policy does not prohibit the legal (prescription or non-prescription) use of medications containing alcohol or the legal (prescription or non-prescription) use of drugs, but [Employer] requires that all Employees disclose to [Employer], in advance of working, when taking medication containing alcohol or any drug that poses a significant risk of substantial harm to the health or safety of the individual or to others, or when taking any medication containing alcohol or any drug that renders the Employee unable to perform the essential functions of the job. In such instances [Employer] will make reasonable accommodations, if appropriate. *It is the Employee's responsibility to consult with the Employee's licensed healthcare professional to determine if any medication or drug requires disclosure under this paragraph.*

(Policy at 2; R.R. at 22a) (emphasis added).

Following Employer's presentation of its case, Claimant answered "yes" in response to the referee's question as to whether Employer notified her that she had tested positive for the presence of marijuana. (N.T. at 13; R.R. at 69a.)

4

Additionally, she testified that she self-reported the random drug-test incident to the Department of State[6] after which she submitted to an evaluation at Greenbriar Treatment Center to determine whether she suffered from a condition that would make her eligible for enrollment in a voluntary recovery program.[7] (*Id*. at 11; R.R. at 67a.) Upon the center's determination that she did not meet the criteria for substance abuse disorder and "no treatment" recommendation,[8] the Department of State issued a letter indicating that it had closed her voluntary recovery program file based on the results of the approved evaluation.[9] (*Id*.)

Additionally, Claimant testified as to her understanding that CBD oil could be purchased over the counter, that some oils tested positive and some oils tested negative, but that the ones that tested positive were false positives. (*Id*.) Claimant acknowledged that she did not provide Employer with anything from a healthcare provider to that effect. (*Id*.) Further, Claimant reiterated that she did not do drugs. (*Id*. at 13; R.R. at 69a.)

The referee affirmed the local job center's determination of ineligibility. In November 2018, the Board affirmed.[10] Claimant appealed.

---

[6] (March 27, 2018, Letter to ot-complaints@pa.gov, Claimant Questionnaire Attachment, Exhibit 15; R.R. at 11a.)

[7] (April 2, 2018, Letter from Department of State, Claimant Questionnaire Attachment, Exhibit 16; R.R. at 13-14a.)

[8] (May 10, 2018, Letter from Greenbriar; Claimant's Hearing Exhibit 1; R.R. at 73a.)

[9] (May 1, 2018, Letter from Department of State, Claimant's Hearing Exhibit 2; R.R. at 74a.)

[10] In relevant part, the Board found that while Employer did not enter the results of the drug test into the record, Claimant admitted that she failed the drug test. Specifically, the Board stated: "It is abundantly clear from the record that Claimant admitted to testing positive for marijuana. Importantly, [Claimant] acknowledged in her testimony and in her documents to the [Department of Labor and Industry] that she failed a drug test and that she utilizes CBD [oil], a derivative of marijuana." (Board's November 2, 2018, Decision at 2.) Accordingly, the Board determined that

5

Following this Court's order granting the Board's request for remission of the appeal, the Board vacated its prior decision and held that Claimant was not ineligible for benefits. The Board's analysis includes the following:

> [Employer] proved that it has a policy prohibiting employees from reporting to work under the influence of a controlled substance and that it can randomly test employees. [Claimant] was aware of [Employer's] policies. [Employer] alleged that [Claimant] tested positive for marijuana, but, notably, did not submit into evidence the drug test.
>
> [Claimant] testified that her ingestion of CBD oil created a drug test with a "false positive." The Referee rejected this argument, reasoning that [Claimant] did not present any evidence that CBD oil could have that effect. On appeal, [Claimant] again argues that her drug test was a "false positive." She argues that CBD and marijuana are derived from the same plant, but, unlike marijuana, CBD is not a psychoactive substance and it is legal.
>
> THC stands for tetrahydrocannabinol and is the active ingredient of marijuana. THC is listed as a controlled substance; CBD is not. *See* 28 Pa. Code §25.72. The packaging for medical marijuana must specify the percentage of THC and CBD. *See* 35 P.S. §10231.801(i)(5).[11] A medical marijuana dispensary may dispense a product with a THC concentration of 0.3% or less. See 28 Pa. Code §1161.27(d).
>
> [Claimant] admitted that she ingested CBD, which, although it is derived from marijuana, is not a controlled substance. Ingestion of CBD alone would not violate a substance abuse policy. To be dispensed legally, CBD oil must have a THC level of 0.3% or less. [Claimant] believed that she was ingesting a legal substance, which

once Employer proved its policy and the fact of Claimant's positive drug test, the burden shifted to Claimant.

    [11] *See infra* note 12.

6

she purchased over the counter and disclosed to [Employer]. It is [Employer's] burden to prove that [Claimant] violated its substance abuse policy. *Because [Employer] did not submit [Claimant's] test results into evidence, there is no evidence in the record as to the percentage of THC it detected.* Based on the foregoing, [Employer] did not meet its burden to prove that [Claimant] violated its substance abuse policy. Therefore, [Claimant] is not ineligible for benefits under Section 402(e.1) of the Law.

(Board's June 18, 2019 Decision at 2-3) (emphasis added) (footnote added).

On appeal, Employer asserts the following issues: (1) whether the Board erred in concluding that Employer failed to establish the positive results of the drug test; (2) whether the Board erred in concluding that Claimant's ingestion of CBD oil alone would not violate Employer's policy; (3) whether the Board erred in accepting Claimant's subjective belief as a defense under Section 402(e.1) of the Law; and (4) whether the Board erred in relying on the Medical Marijuana Act[12] and related regulations. Our disposition of the first issue is dispositive.

Where an employee refuses to take or fails to pass a drug test, the employee's discharge is properly analyzed under Section 402(e.1) of the Law and not Section 402(e). *Dillon v. Unemployment Comp. Bd. of Review*, 68 A.3d 1054, 1057 (Pa. Cmwlth. 2013). Section 402(e.1) of the Law provides that an employee is ineligible for benefits for any week

> [i]n which his unemployment is due to discharge or temporary suspension from work due to failure to submit and/or pass a drug test conducted pursuant to an employer's established substance abuse policy, provided that the drug test is not requested or implemented in violation of the law or of a collective bargaining

---

[12] Act of April 17, 2016, P.L. 84, 35 P.S. §§ 10231.101-10231.2110.

agreement.

43 P.S. §802(e.1).

To render an employee ineligible for benefits under Section 402(e.1), an employer is required to demonstrate (1) that it had an established substance abuse policy and (2) that the claimant violated the policy. *Bowers v. Unemployment Comp. Bd. of Review*, 165 A.3d 49, 52 (Pa. Cmwlth. 2017). If an employer meets its initial burden, a claimant will be rendered ineligible for benefits unless the claimant is able to demonstrate that the employer's substance abuse policy is in violation of the law or a collective bargaining agreement. *Id.* In contrast to Section 402(e), Section 402(e.1) does not permit a claimant to show good cause or justification for a violation.

In the present case, the burden never shifted to Claimant because Employer was unable to prove that she violated the policy. Employer argues that Claimant admitted that she "failed" the drug test. That is inaccurate; she admitted only that someone told her so. This acknowledgement did not constitute an admission because she had no knowledge of the underlying fact. It was simply uncorroborated hearsay, which she had no burden to deny. *Carson v. Unemployment Comp. Bd. of Review*, 711 A.2d 582, 585 (Pa. Cmwlth. 1998) (holding that it is inappropriate to require a claimant to deny uncorroborated, hearsay allegations, especially when employer has the burden of proof). She always maintained the possibility that her use of an over-the-counter herbal remedy could have resulted in a false positive test result. In addition, she consistently denied any drug and alcohol use. (Claimant Questionnaire, Exhibit 13; R.R. at 7a.)

Moreover, Employer independently failed to carry its burden of proof. Besides Barron's attempt to testify as to what a third-party testing company

8

employee allegedly told her, which the referee correctly excluded as hearsay, Barron failed to provide any information relating to the drug test. (N.T. at 5; R.R. at 61a.) As noted, she did not provide the results at the hearing.[13]

Additionally, Employer did not prove that Claimant violated its work rule because it presented no evidence that the CBD oil that she ingested would affect her performance in ways prohibited by the policy. As the referee observed at the hearing, there were no allegations that Claimant was unable to perform the essential functions of her job when the nurse conducted the drug test. (*Id*. at 7; R.R. at 63a.) Finally, the CBD oil that Claimant ingested was not a controlled substance. *See* 28 Pa. Code §25.72 (tetrahydrocannabinol, the active ingredient in marijuana, is a controlled substance, but CBD is not).

Accordingly, we affirm.

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[13] A positive drug test is a medical fact. *UGI Utils., Inc. v. Unemployment Comp. Bd. of Review*, 851 A.2d 240 (Pa. Cmwlth. 2004). The proponent of a lab report must present evidence sufficient to support a finding that the report is what its proponent claims. *Id*. Where, as here, a third party prepared the test results, Employer at a minimum should have submitted evidence regarding a chain of custody and the test results. *See O'Brien v. Unemployment Comp. Bd. of Review*, 49 A.3d 916, 919 (Pa. Cmwlth. 2012) ("[a]s long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness of the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence").

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Washington Health System,   :
       Petitioner :
          :
    v.      : No. 886 C.D. 2019
          :
Unemployment Compensation Board :
of Review,      :
       Respondent :

## **O R D E R**

   AND NOW, this 11th day of May, 2020, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

           _____
           **BONNIE BRIGANCE LEADBETTER,**
           Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Washington Health System,     :
        :
        Petitioner   :
        :
      v.        :  No. 886 C.D. 2019
        :  Argued:  February 13, 2020
Unemployment Compensation    :
Board of Review,    :
        :
        Respondent :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge (P.)
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


DISSENTING
OPINION BY JUDGE WOJCIK          FILED:  May 11, 2020


        Respectfully, I dissent.  The Majority errs in concluding that due to the absence of documented drug test results, the record does not contain sufficient evidence to demonstrate that Kitty Moriarty (Claimant) is ineligible for benefits under Section 402(e.1) of the Unemployment Compensation Law (Law).[1]  To the

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e.1).  Section 402(e.1) of the Law was added by Section 3 of the Act of December 9, 2002, P.L. 1330, and became effective immediately.

      Section 402(e.1) of the Law provides that an employee is ineligible for benefits for any week

> [i]n which his unemployment is due to discharge or temporary suspension from work due to failure to submit and/or pass a drug test conducted pursuant to an employer's established substance abuse policy, provided that the drug test is not requested or

**(Footnote continued on next page…)**

contrary, we have repeatedly held that the introduction of drug test results is *not* the only way to establish an employee's violation of a drug policy; a claimant's admissions are sufficient to meet an employer's burden of proof under Section 402(e.1) of the Law. *Dillon v. Unemployment Compensation Board of Review*, 68 A.3d 1054 (Pa. Cmwlth. 2013); *Greer v. Unemployment Compensation Board of Review*, 4 A.3d 733 (Pa. Cmwlth. 2010); *Raub v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1479 C.D. 2016, filed April 7, 2017);[2] *Direnna v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 754 C.D. 2014, filed February 20, 2015); *Consolidated Scrap Resources, Inc. v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1002 C.D. 2010, filed December 30, 2010). For this reason, and for the additional reasons discussed below, I would vacate the order of the Unemployment Compensation Board of Review (Board) and remand for a decision based on the relevant evidence.

## Facts and Procedural History

Claimant was employed by Washington Health System (Employer) as a licensed occupational therapist. On March 21, 2018, Claimant was asked to submit to a random drug screen. At that time, she advised the nurse that she was taking cannabidiol (CBD) oil to manage symptoms related to cancer and

---

**(continued…)**

> implemented in violation of the law or of a collective bargaining agreement.

43 P.S. §802(e.1).

[2] Under Section 414(a) of this Court's Internal Operating Procedures, an unreported opinion may be cited for its persuasive value. 210 Pa. Code §69.414(a).

chemotherapy treatment. Employer notified Claimant that the results of the drug screen were positive for marijuana metabolites, and Claimant was immediately suspended for violating Employer's drug and alcohol policy. Because the violation followed a previous disciplinary action, Employer ultimately terminated Claimant's employment.

The local job center found Claimant ineligible for benefits under Section 402(e.1) of the Law. Claimant appealed. A referee held a hearing on May 17, 2018, at which Claimant was represented by counsel. Katie Barron, Employer's human relations partner, testified for Employer.

Barron testified that Employer has a Drug and Alcohol Free Workplace Policy. Exhibit 10, Reproduced Record (R.R.) at 21a-26a. Barron stated that Claimant was discharged when the results of the random drug screening came back positive for marijuana. Employer did not submit documentation of the test results into evidence.

Barron said that Claimant could have offered a response or provided additional information to Employer, but she did not. Barron added that Claimant did request an additional test, which was conducted. R.R. at 61a.

On cross-examination, Barron testified that under Employer's drug and alcohol policy, grounds for disciplinary action include being under the influence of alcohol or drugs, or having drugs in one's system while on Employer's premises or work sites. She noted that Claimant worked in the area of patient care and said that working under the influence of drugs would pose a significant risk to Claimant, other employees, and patients.

Barron referenced Section F of the policy, which defines the term "drug" as "*any substance* producing effects on the central nervous system . . . ."

R.R. at 23a (emphasis added).  With respect to drugs, Employer's policy defines the term "under the influence" as "*any amount that is capable of rendering a positive result* in any drug test performed under this Policy."  *Id.* (emphasis added).

Section C of the policy states in part:

> This Policy does not prohibit the legal (prescription or non-prescription) use of medications containing alcohol or the legal (prescription or non-prescription) use of drugs, but [Employer] requires that all Employees disclose to [Employer], in advance of working, when taking medication containing alcohol or any drug that poses a significant risk of substantial harm to the health or safety of the individual or to others, or when taking any medication containing alcohol or any drug that renders the Employee unable to perform the essential functions of the job.  In such instances [Employer] will make reasonable accommodations, if appropriate.  *It is the Employee's responsibility to consult with the Employee's licensed healthcare professional to determine if any medication or drug requires disclosure under this paragraph.*

R.R. at 22a (emphasis added).  Barron explained that while the policy does not prohibit the legal use of drugs or medications containing alcohol, it requires employees to determine whether such use should be disclosed to Employer, in advance of working.

Claimant testified that she is a licensed occupational therapist[3] and worked for Employer for approximately three years.  R.R. at 66a.  Claimant was aware that she could be tested for drugs and that she could be discharged if she had a positive test result.

---

[3] Claimant self-reported the incident to the state licensing bureau.  R.R. at 11a.  As a result, she was required to attend an evaluation at Greenbriar Treatment Center, which concluded that she did not meet the criteria for substance abuse disorder and recommended no treatment.

Claimant testified that CBD oil can be purchased over the counter. She said a doctor told her that the use of CBD oil could yield a false positive test result, but she did not provide Employer any information from a healthcare provider indicating that the use of CBD oil could cause a false positive result for marijuana. R.R. at 69a.

The local job center determined that Claimant was ineligible for benefits under Section 402(e.1) of the Law, and the referee affirmed the local job center's determination. By decision and order dated November 2, 2018, the Board also affirmed.[4]

Claimant appealed. By order dated April 30, 2019, this Court granted the Board's request for remission of the appeal. In its June 18, 2019 decision, the Board vacated its prior order and held that Claimant is not ineligible for benefits under Section 402(e.1) of the Law. As set forth by the Majority, the Board reasoned in part that Employer did not submit the drug test into evidence; unlike marijuana, CBD is not a psychoactive substance, it is not a controlled substance, and it is legal. The Board opined that "ingestion of CBD alone would not violate a substance abuse policy." Board's June 18, 2019 decision at 3 (emphasis added). Finally, the Board observed that there was no evidence in the

_____

[4] In its first decision, the Board found that while Employer did not enter the results of the drug test into the record, Claimant admitted that she failed the drug test. ("It is abundantly clear from the record that Claimant admitted to testing positive for marijuana. Importantly, [Claimant] acknowledged in her testimony and in her documents to the department that she failed a drug test and that she utilizes CBD, a derivative of marijuana." Board's November 2, 2018 decision at 2.) The Board noted that after Employer proved its policy and the fact of Claimant's positive drug test, the burden shifted to Claimant to establish that the test was in violation of the law or a collective bargaining agreement. The Board explained that Claimant's attempt to establish good cause or justification was inconsequential, as the same are not defenses under Section 402(e.1).

record "as to the percentage of [tetrahydrocannabinol (THC)]" the drug screen detected. *Id.* The Board's analysis reflects multiple errors.

**Discussion**[5]

Where an employee refuses to take or fails to pass a drug test, the employee's discharge is properly analyzed under Section 402(e.1) of the Law rather than Section 402(e). *Dillon*, 68 A.3d at 1057. To render an employee ineligible for benefits under Section 402(e.1), an employer is required to demonstrate that (1) it had an established substance abuse policy and (2) the claimant violated the policy. *Bowers v. Unemployment Compensation Board of Review*, 165 A.3d 49, 52 (Pa. Cmwlth. 2017); *UGI Utilities, Inc. v. Unemployment Compensation Board of Review*, 851 A.2d 240, 252 (Pa. Cmwlth. 2004). If an employer meets its initial burden, a claimant will be rendered ineligible for benefits unless the claimant is able to demonstrate that the employer's substance abuse policy is in violation of the law or a collective bargaining agreement. *Bowers*, 165 A.3d at 52 n.5. Notably, and in contrast to Section 402(e) of the Law, Section 402(e.1) does not permit a claimant to show good cause or justification for a violation of the employer's policy.

On appeal, Employer first argues that Claimant's admissions constitute sufficient evidence to support a finding of a positive drug test.

We have previously held that out-of-court statements by a claimant on her submissions, like the "claimant questionnaire," the "internet initial claims

---

[5] Our scope of review is limited to determining whether the Board's findings of fact are supported by substantial evidence in the record, whether an error of law was committed, or whether constitutional rights were violated. *Greer*, 4 A.3d at 736 n.4.

form," and the "initial interview form," constitute party admissions that are admissible as an exception to the hearsay rule. *Stugart v. Unemployment Compensation Board of Review*, 85 A.3d 606, 608 (Pa. Cmwlth. 2014); *Dillon*, 68 A.3d at 1060 (holding that the claimant's admissions in an internet form along with his signature on a blood alcohol testing form were competent evidence establishing the results of his drug test). "[W]ords of a party constitute an admission and therefore may always be used against him." *Stugart*, 85 A.3d at 608 (explaining that an admission may support a finding of fact). *See also Vivas v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1609 C.D. 2011, filed May 31, 2012) (upholding the Board's decision crediting admissions in a questionnaire over live testimony).

We have observed that the probative value of an admission "depends on its nature and the circumstance under which it was made." *Gougher v. Hansler*, 130 A.2d 150, 153 (Pa. 1957); *Unemployment Compensation Board of Review v. Houp*, 340 A.2d 588, 592 (Pa. Cmwlth. 1975). "[A]dmissions constitute independent evidence of themselves and are therefore capable of independently providing competent evidence to support the findings of the Board." *Houp*, 340 A.2d at 591. Relevant here, we have held that such admissions are competent evidence that may satisfy an employer's burden under Section 402(e.1) of the Law. *Dillon*; *Greer*.

The claimant in *Greer* was discharged for testing positive for cocaine in violation of the employer's drug and alcohol policy. The claimant admitted on a questionnaire that he failed the drug test. During his testimony, he also admitted that he had ingested cocaine a week before the test. This Court affirmed the Board's decision that the claimant was ineligible for benefits under Section

402(e.1) of the Law. In doing so, we held in *Greer* that introducing drug test results into evidence "is not the sole means by which an employer can demonstrate a claimant violated a substance abuse policy. Violation of an employer's substance abuse policy also can be established by a claimant's own admission that he or she violated the policy." 4 A.3d at 737. In *Greer*, we concluded that the claimant's admission to failing a drug test was sufficient to support the Board's finding that the claimant tested positive.

Similarly, in *Consolidated Scrap Resources, Inc.*, we reversed the Board's determination that the employer failed to meet its burden to prove ineligibility under Section 402(e.1) where the claimant's internet claim forms acknowledged that he failed a drug test. "We find this to be competent evidence of ineligibility under Section 402(e.1), *which requires proof only that the test was failed, not that the claimant actually took drugs*." *Consolidated Scrap Resources, Inc.*, slip op. at 7 (emphasis added).

In *Raub*, the claimant was denied benefits for refusing to submit to a drug test. At the referee's hearing, the claimant asserted that a woman was present during the second collection of a urine sample, rendering the test in violation of applicable regulations. However, the Board found that only a man was present during the testing and that the claimant's refusal to submit to the testing rendered him ineligible for benefits under Section 402(e.1). Affirming the Board's decision, we noted that the Claimant Questionnaire had been admitted without objection, and we observed that the Board was free to reject the claimant's testimony even if it was unrebutted. Importantly, we further noted that the "[claimant's] testimony at the referee hearing was rebutted by his admission in the Claimant Questionnaire that only a male was present during the collection of the second sample." Slip op.

MHW-8

at 6-7. We explained that the claimant's "statement in the Claimant Questionnaire constitutes an admission that only a male was present during the second collection[, and the] admission regarding the legality of the collection process constitutes substantial evidence supporting the Board's findings in this regard." *Id.* at 6-7 n.7. Summarizing, we stated that the Board was free to accept as credible that portion of the claimant's testimony that was corroborated by the statement in the Claimant Questionnaire and to reject as not credible his differing and uncorroborated testimony.

In light of the foregoing, it is evident that the Board erred in concluding that Employer could not meet its burden under Section 402(e.1) of the Law without submitting the actual test results into evidence. Moreover, the record includes Claimant's admissions that the test result was positive. In the Employment Separation Questionnaire submitted by Claimant, she specifically stated: "The test came back positive for 'marijuana metabolites.'" R.R. at 9a. In Claimant's letter to the licensing board, she likewise stated: "When the test came back it was positive for 'marijuana metabolites.'" R.R. at 11a.[6] Records of

---

[6] Arguably, Claimant's testimony implicitly corroborated these written statements:

> R  And did Employer notify you that you tested positive for the presence of marijuana?
>
> C  Yes. Marijuana in (inaudible).
>
> R  And what explanation, if any, do you have for that positive test or response?
>
> C  The CBD oils is from what I understand, you can get it over the counter. You can get it at Vitamin Shoppe up here. There's ones that tests [sic] positive. There's ones that don't. But the doctor that I talked to who . . . calls with the results of the test, has told

**(Footnote continued on next page…)**

subsequent oral interviews reflect Claimant's statements that she knew CBD oil was derived from marijuana and she did not disclose her use of CBD oil to Employer in advance of working. R.R. at 30a-31a. Pursuant to *Dillon* and *Greer*, these statements could support a finding that Claimant's test result was positive, and therefore, the Board erred in failing to issue necessary findings as to their credibility and evidentiary weight.[7]

Employer's remaining arguments also have merit. First, the Board's inferences and conclusions regarding the legal sale of CBD oil and the percentage of THC in CBD oil are not supported by record evidence. More important, they are completely irrelevant to the appropriate analysis under Section 402(e.1). Additionally, these conclusions disregard the Board's findings that: (1) Employer's policy prohibits coming to work under the influence of drugs; and (2) the policy defines under the influence as the amount *of any drug* that triggers a positive test result. I note that in *Dillon*, we rejected the Board's attempt to distinguish the legal use of alcohol from use of an illegal substance:

> [W]ith respect to the Board's legal/illegal distinction, we note that physician-prescribed and over-the-counter pharmaceutical drugs are also legal but, like alcohol, can have serious negative consequences when abused or when used in an improper setting, such as when driving

_____

**(continued…)**

> me that testing for that is insufficient. And ones that test positive are false positives.

R.R. at 69a.

[7] Determinations of credibility and the weight given evidence are within the discretion of the Board as factfinder. *Spadaro v. Unemployment Compensation Board of Review*, 850 A.2d 855, 860 (Pa. Cmwlth. 2004).

or operating heavy machinery. . . . It is precisely because the risks associated with substance abuse vary widely, depending on the nature of the industry and the job duties involved, that Section 402(e.1) comes into play only where the employer has specifically set out a substance abuse policy.

68 A.2d at 1058-59.

Employer further argues, correctly, that the Board erred in considering Claimant's intent or knowledge of CBD oil as a defense to Section 402(e.1) of the Law. A claimant's subjective beliefs are irrelevant to a determination under Section 402(e.1), which does not provide for good cause or justification as a defense. *Bowers*, 165 A.3d at 52 n.5. To the extent the Board considered Claimant's understanding "that she was ingesting a legal substance," Board decision at 3, the Board erred.

Finally, Employer argues that the Board erred in considering the regulation of marijuana and whether CBD is a controlled substance. Again, I agree. Employer's policy defines drug as "*any substance* producing effects on the central nervous system, *or* any controlled substance." R.R. at 23a (emphasis added). That unambiguously broad definition includes legally obtained substances. I believe Employer's policy reflects the reality that legally obtained substances can cause impairment. *Dillon*, 68 A.3d at 1058-59. In emphasizing the lack of evidence that ingestion of CBD oil could or did affect Claimant's performance, Majority, slip op. at 4, 9, I believe the Majority also errs.

Accordingly, for all of the above reasons, I would vacate the Board's order and remand for the Board to issue a new decision.

MICHAEL H. WOJCIK, Judge

MHW-11